United States District Court
Southern District of Texas
**ENTERED**
October 21, 2025
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ERNEST WOODS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-25-1098 |
| | § | |
| CHANDLER HOLLOWAY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Ernest Woods, representing himself and proceeding without paying the filing fee, sued the City of Conroe, the City of Conroe Police Department, and City of Conroe Police Officers Chandler Holloway and Parker Tullis under 42 U.S.C. § 1983. (Docket Entry Nos. 1, 12). The lawsuit arises from a January 2025 traffic stop and detention. (*Id.*). The court previously dismissed the claims against the City and the Police Department. (Docket Entry No. 35). The court also dismissed Woods's excessive force claims against Officers Holloway and Tullis. (Docket Entry No. 37). The remaining claims against Officers Holloway and Tullis are for an illegal stop, an illegal search, and racial profiling. Holloway and Tullis have moved for summary judgment as to those claims. (Docket Entry No. 38). Woods filed a response, and the officers replied. (Docket Entry Nos. 40, 43). Based on the court's review of the motion, the response and reply, the record evidence, and the law, the court grants the motion for summary judgment and enters final judgment by separate order. The reasons are explained below.

## I.    Background.

In his amended complaint, Woods alleges that on January 24, 2025, he left his home in Conroe, Texas, and drove his mother's van[1] to a park next to a Montgomery County library. (Docket Entry No. 12, p. 2). While he was walking in the park, he answered a telephone call from his daughter. (*Id.*). A few minutes later, still on the telephone call, he went back to the van, drove out of the parking lot, and proceeded down the freeway, heading for a grocery store. (*Id.*).

As Woods drove out of the parking lot, a City of Conroe Police Department patrol car pulled in behind him and followed him down the freeway. (*Id.*). When Woods arrived in the grocery store parking lot, three or four patrol cars surrounded the van. (*Id.*). Woods stopped, and Officer Holloway approached the driver's side door. (*Id.*). Holloway ordered Woods to put his hands on the steering wheel and end his call with his daughter. (*Id.*). When Woods asked why he was being stopped, Holloway said it was because of an "insurance lapse." (*Id.*). Holloway ran a check of Woods's driver's license, which confirmed the insurance lapse on the van but reported no other issues. (*Id.* at 3).

Holloway ordered Woods out of the van. (*Id.*). Woods refused, telling Holloway that there was no probable cause for the stop. (*Id.*). In response, Holloway reached through the open driver's window, unlocked the door, opened it, and ordered Woods to get out of the van. (*Id.*). When Woods again refused, Officer Tullis threatened to use physical force if Woods did not comply. (*Id.*). Woods then got out of the van. (*Id.*). Holloway ordered him to walk to the back of the van, where he frisked Woods. (*Id.*). Holloway then searched the van, telling Woods it was an inventory search necessary before the van was towed. (*Id.*). Nothing illegal was found. (*Id.*). The van was

---

[1]The vehicle in question was a Chrysler Pacifica, which is sometimes described as a van and other times as a car.

2

towed due to the lack of insurance, and Woods was cited for driving without insurance. (*Id.*). On February 25, 2025, the citation was dismissed because of a technical error. (*Id.*).

Woods alleges that these actions violated his Fourth Amendment rights because he was stopped without reasonable suspicion, patted down without consent, had his van searched without either consent or probable cause, and was subjected to excessive force. (*Id.*). He also alleges that the stop was racially motivated, violating equal protection. (*Id.*). Woods seeks compensatory damages for the emotional distress and economic losses that he allegedly suffered because of the constitutional violations, along with the costs resulting from the van being towed. (*Id.*). He also seeks an award of legal fees so that he can retain counsel. (*Id.*).

The court previously dismissed the excessive force claims against Holloway and Tullis. (Docket Entry No. 37). Holloway and Tullis have now filed a motion for summary judgment as to the remaining claims. (Docket Entry No. 38). In support of their motion, Holloway and Tullis filed the video from Holloway's body camera during the stop, along with their affidavits. (Docket Entry Nos. 38-1, 38-2, 39). They contend that this evidence shows that the stop, pat down, and inventory search were lawful and that there is no evidence to support Woods's claim of racial profiling. (Docket Entry No. 38, pp. 6-9). In the alternative, Holloway and Tullis contend that they are entitled to qualified immunity. (*Id.* at 9-11).

In his affidavit in support of the motion, Holloway states that he was on patrol at 9:20 p.m. on January 24, 2025, when he saw a single vehicle–a grey or silver Chrysler Pacifica–parked in the Conroe library parking lot. (Docket Entry No. 38-1, p. 2). As he pulled into the parking lot, the driver started the Chrysler and began driving away. (*Id.*). Holloway knew that there had been "a series of car burglaries involving someone driving a Chrysler Pacifica," and he found it suspicious that the Chrysler left the parking lot just as he entered in his marked patrol car. (*Id.*).

3

He decided to follow the Chrysler and run a computer check on the license plate. (*Id.*). The check showed that the insurance on the vehicle was "unconfirmed." (*Id.*). Based on this, Holloway believed that he had a sufficient basis for a traffic stop. (*Id.*).

The remainder of Holloway's affidavit generally tracks the events recorded on his body camera footage. This footage begins as Holloway is pulling into the grocery store parking lot behind the Chrysler. (Docket Entry No. 39, at 21:23). Holloway stops his patrol car and approaches the driver's side of the Chrysler. (*Id.*). Holloway sees that Woods is on his cell phone and asks him to put his hands on the steering wheel. (*Id.*). Woods refuses, demanding that Holloway explain the reason for the stop. (*Id.*). Holloway introduces himself and tells Woods that a check of his license plate showed no insurance on the Chrysler. (*Id.* at 21:24:01). Woods insists that the Chrysler is insured and again states that he will not comply with any orders until Holloway tells him why he was pulled over. (*Id.*). Holloway again tells Woods that he was pulled over because a computer check showed that there was no insurance on the Chrysler. (*Id.*).

Woods begins looking through the glove box, presumably for the insurance card, while arguing with Holloway about whether Holloway lawfully followed him when he left the library parking lot. (*Id.* at 21:27:09). When Woods is unable to find an insurance card, he calls his mother, who admits that there is no insurance on the Chrysler because it became "too expensive." (*Id.* at 21:29:32). The call is on speakerphone, and Woods's mother's statement that there is no insurance on the Chrysler is clearly audible in the body camera footage.

With confirmation that the Chrysler was not insured, Holloway orders Woods to step out of the car. (*Id.* at 21:31:21). Woods refuses, again saying he will not comply until Holloway tells him the reason. (*Id.*). Holloway opens the driver's door, but Woods again says, "I'm not stepping out without you telling me why I'm stepping out." (*Id.* at 21:31:30). Tullis tells Woods that he

4

has been given a lawful order that is supported by law from the Supreme Court and that he should comply to avoid the use of force. (*Id.* at 21:31:41). Woods then gets out and moves to the back of the Chrysler. (*Id.*).

Holloway pats down Woods for weapons and tells him that during the past week and a half, the Conroe Police had 20 to 25 reports of car burglaries committed by a "skinny black male driving a silver Chrysler Pacifica." (*Id.* at 21:33:15). Holloway explains that based on the description in these reports, he had a reasonable suspicion to stop Woods—a black man driving a grey Chrysler Pacifica—to investigate. (*Id.* at 21:34:09). Woods responds that he is not skinny and that he believes he is being profiled. (*Id.*). Holloway then tells Woods that they are satisfied that he had nothing to do with the burglaries and that, if the Chrysler had insurance, he would be free to go. (*Id.* at 21:34:49). Holloway explains that because the vehicle had no insurance, department policy required the Chrysler to be towed after an inventory search. (*Id.* at 21:35:11; 21:35:35). During that inventory search, Holloway gives Woods multiple items from inside the Chrysler to take with him, including Woods's mother's wallet, Woods's "medicine box," and a backpack. (*Id.* at 21:36:45-21:46:10).

After the inventory search, Holloway cites Woods for driving without insurance. (*Id.* at 21:56:14). Woods then walks toward the grocery store to wait for a ride. (*Id.* at 21:58:01). The towing company arrives a minute later. (*Id.* at 21:57:28).

Tullis's affidavit states that he acted as a back-up officer. (Docket Entry No. 38-2, p. 2). Tullis's statement is consistent with Holloway's account in all important respects. (*Id.* at 2-3).

In his response to the motion, Woods contends that summary judgment is premature because the Conroe Police Department has not fully responded to Freedom of Information Act requests he made before filing this action. (Docket Entry No. 40, p. 2). Woods also contends that

5

summary judgment is improper because there are factual questions as to whether the officers had a reasonable suspicion for stopping him.  (*Id.* at 3).  He contends that the arrival of multiple police vehicles at the scene contradicts Holloway's testimony that this was a "routine insurance check." (*Id.*).  Woods also contends that there is a factual dispute as to whether the stop was pretextual because the citation for lack of insurance was dismissed.  (*Id.*).  Woods contends that he did not consent to the vehicle search or the pat down, and that, because the officers stopped him without reasonable suspicion, they are not entitled to qualified immunity.  (*Id.* at 4).  Woods attaches several unauthenticated transcripts of telephone calls he has had with Conroe Police Department officials and employees of the City of Conroe as summary judgment evidence, along with his affidavit.  (Docket Entry Nos. 41, 41-1, 42).

In their reply, Holloway and Tullis contend that the unauthenticated transcripts Woods filed are not proper summary judgment evidence.  (Docket Entry No. 43, p. 1, n.1).  They assert that the subsequent dismissal of the traffic citation does not affect whether Holloway had a reasonable suspicion at the time of the stop and that neither a pat-down search nor an inventory search requires consent.  (*Id.* at 3-4).  They also contend that Woods has not carried his burden to identify clearly established law showing that either Holloway or Tullis violated his constitutional rights.  (*Id.* at 2).  They ask the court to grant their motion and dismiss the action against them.

## II.    The Legal Standards.

### A.    Actions Under 42 U.S.C. § 1983

Woods brings his claims against Holloway and Tullis under 42 U.S.C. § 1983.  "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  To

state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.  *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Gomez v Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam).  When no competent evidence exists to sustain a finding that the defendant violated the plaintiff's constitutional rights, summary judgment is properly entered in favor of the defendants.  *See, e.g., Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019).

### B.    Motions for Summary Judgment

"Summary judgment is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton,* 572 U.S. 650, 656-57 (2014) (per curiam) (quoting FED. R. CIV. P. 56(a)).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine [dispute] of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25 (1986)).  "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 134 (5th Cir. 2010)).  "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (per curiam) (cleaned up).

The court considering a motion for summary judgment must view the evidence and draw inferences "in the light most favorable to the opposing party." *Tolan*, 572 U.S. at 657 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)); *see also Dyer*, 964 F.3d at 380.  When both parties have submitted evidence that tends to show conflicting facts, "the evidence of the

7

nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Willis v. Roche Biomedical Labs., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995).  But unverified pleadings and unauthenticated documents are not proper summary judgment evidence.  *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).  In addition, the court will not consider the nonmoving party's conclusory allegations and unsubstantiated assertions as evidence.  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  "Speculative theories cannot defeat a motion for summary judgment."  *Guillot on Behalf of T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023).

If record evidence clearly contradicts a party's version of events, the court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Waddleton v. Rodriguez*, 750 F. App'x 248, 253-54 (5th Cir. 2018) (per curiam) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  When video evidence exists, the court will "view[] the facts in the light depicted by the videotape."  *Salazar v. Molina*, 37 F.4th 278, 280 (5th Cir. 2022) (quoting *Scott*, 550 U.S. at 381); *see also Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) ("[W]e assign greater weight, even at the summary judgment stage, to the video recording taken at the scene.") (cleaned up); *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) ("A court . . . need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videotape.") (cleaned up).

After viewing the offered evidence in the light most favorable to the nonmoving party, summary judgment may be granted if the nonmoving party has failed to show that genuine disputes of fact exist that are material to every element on which he bears the burden of proof and that no reasonable jury could return a verdict for the nonmoving party.  *See, e.g., Celotex,* 477 U.S. at 322-23; *see also Rubinstein v. Adm'rs of the Tulane Educ. Fund,* 218 F.3d 392, 399 (5th Cir. 2000).

### C.    Pleadings from Self-Represented Litigants

Woods is representing himself.  Courts construe pleadings filed by self-represented litigants under a less stringent standard of review.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  But even under this liberal standard, self-represented litigants must still "abide by the rules that govern the federal courts."  *E.E.O.C. v. Simbaki, Ltd*., 767 F.3d 475, 484 (5th Cir. 2014).  They must also "properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal."  *Id.* (cleaned up).  While self-represented litigants are held to less stringent standards than attorneys, they are not excused from the requirement of alleging sufficient facts to state a plausible claim. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *see also Toole v. Peak*, 361 F. App'x 621, 621 (5th Cir. 2010) (per curiam) (a self-represented litigant "still must argue something that is susceptible to liberal construction").

## III.    Discussion.

### A.    The Summary Judgment Motion is Not Premature

Woods first contends that consideration of the motion for summary judgment is premature because he has not received information he requested from the City of Conroe and the Conroe Police Department before he filed this action.  He specifically identifies two items:  (1) the record of the CAD keystroke data from Holloway's in-car computer before the traffic stop; and (2) the "missing" audio from Holloway's body camera footage.  (Docket Entry No. 40, p. 2).  Woods

contends that the CAD keystroke data is relevant to show whether Holloway checked the Chrysler's license plate before initiating the traffic stop. (*Id.*). Woods contends that the "missing" audio is relevant because it might contain his "initial refusals or other exculpatory statements." (*Id.*).

Federal Rule of Civil Procedure 56 permits the court to defer ruling on a motion for summary judgment when the nonmoving party shows, either by affidavit or declaration, that he "cannot present facts essential to justify [his] opposition." FED. R. CIV. P. 56(d). The nonmoving party must show that these facts exist, are capable of being obtained through specific discovery within a reasonable time, and will likely show genuine factual disputes material to summary judgment. *See McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 700 (5th Cir. 2014); *see also Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534-35 (5th Cir. 1999). "If the additional discovery will not likely generate evidence germane to the summary judgment motion, the district court may, in its discretion, proceed to rule on the motion without further ado." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991); *see also Netto v. Amtrak*, 863 F.2d 1210, 1216 (5th Cir. 1989) ("[A] plaintiff's entitlement to discovery before a ruling on a motion for summary judgment is not unlimited and may be cut off when the record shows that the requested discovery will not be likely to produce facts he needs to withstand a summary judgment motion." (citing *Paul Kadair, Inc. v. Sony Corp. of Am.,* 694 F.2d 1017, 1029–30 (5th Cir. 1983))).

As to the CAD keystroke data, Woods fails to show that the data exists or is capable of being obtained within a reasonable time. Sergeant Robinson of the Conroe Police Department told Woods during a recorded conversation on February 26, 2025, that "a CAD call is not created until after a stop is created. So if he . . . since he ran your car before he stopped your vehicle, it's not

10

going to be within the CAD call." (Docket Entry No. 20, p. 47). Later in the same call, Sergeant

Robinson explained that

> [t]he keystrokes in the car that are tied to directly tied to end during that traffic stop
> are what you have. You're not going to have, as of right now, you're not going to
> have what the officer was running or researching. You're doing any of that when
> he was not assigned to a specific call. So majority of these guys come out here on
> the street, they're just out available for dispatch to send them somewhere. And
> *while they're doing that, that's when they conduct all their driver's license checks,
> their license plate checks, their suspect checks, their suspicion checks, like business
> checks, checks. All that stuff is . . . is not . . . It's all . . . every keystroke we utilize
> is documented, but it's not going to be documented under a specific CAD number
> like they provided you.*
>
> * * *
>
> If you want further information, I would come get with the records clerk in person
> and *see if there was a way that you could pull up Holloway and Tullis's keystrokes,
> maybe an hour before that stop.* I don't . . . like I said, it's just a suggestion. I don't
> know how it works back there. I don't know how it's logged or any of that.

(*Id.* at 48-49, emphasis added).

This conversation, assuming it could be properly authenticated,[2] indicates that the CAD

keystroke data Woods seeks is not recorded in a way that connects it to a particular insurance

check, stop, or investigation and so is not readily available. This information does not provide the

court with a plausible basis to believe that the keystroke data from Holloway's patrol car still exists

or that it is capable of being obtained within a reasonable time. Woods is not entitled to have the

decision of the summary judgment motion deferred on this basis.

As to the body camera footage, Woods fails to show that the allegedly missing audio would

include evidence germane to the issues raised in the summary judgment motion. Woods alleges

that the missing audio may contain his "initial refusals or other exculpatory statements." (Docket

---

[2]Holloway and Tullis object to the court's consideration of the transcripts of Woods's telephone
calls with various City officials as unauthenticated. (Docket Entry No. 43, p. 1, n.1). The court has
reviewed these unauthenticated transcripts and gives them the weight they are due.

Entry No. 40, p. 2).  But the only missing audio in the copy of the footage filed in support of the motion for summary judgment is from the first 32 seconds after Holloway activated his body camera.  (Docket Entry No. 39, at 21:22:44-21:23:16).  During that time, Holloway is still in his patrol car, pulling into the parking lot behind Woods.  (*Id.*).  The audio begins when Holloway stops his patrol car and records the entire interaction between Holloway and Woods.  Because the audio begins before Holloway approaches Woods, there is no plausible basis to conclude that the "missing" portion contains Woods's "initial refusals" or other allegedly "exculpatory statements."  Woods has failed to show that the allegedly missing audio would, if produced, create genuine factual disputes material to the outcome of the pending motion.

Because Woods has not shown that the "missing" evidence he seeks is either readily obtainable or material to the summary judgment issues, he has not shown a basis to defer consideration of the motion.

### B.    The Traffic Stop Was Lawful

On the merits of the motion, Woods first contends that Holloway and Tullis are not entitled to summary judgment because there are factual disputes material to determining whether the stop was lawful or the result of racial profiling.

Woods argues that there was no probable cause for the traffic stop, but probable cause is not required.  *See Emesowum v. Cruz*, 756 F. App'x 374, 378 (5th Cir. 2018).  An individual may be stopped and detained based on an officer's "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause."  *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).  A "reasonable suspicion" exists when the officer can point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the detention.  *United States v. Alkheqani*, 78 F.4th 707, 716 (5th Cir.

2023) (quoting *United States v. Broca-Martinez*, 855 F.3d 675, 678 (5th Cir. 2017)).  This standard requires "considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause."  *United States v. Thomas*, 997 F.3d 603, 610 (5th Cir. 2021) (quoting *Kansas v. Glover*, 589 U.S. 376, 380 (2020)).  Instead, it "permit[s] officers to make common-sense judgments" based on the totality of the facts, even when individual actions might have innocent explanations.  *Id.* (cleaned up).

"The Fourth Amendment requires a traffic stop to be justified when it begins," and any later actions must remain "reasonably related in scope to the circumstances that justified the stop." *United States v. Walker*, 49 F.4th 903, 906-07 (5th Cir. 2022) (quoting *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc)).  "A traffic stop is justified at its inception when an officer has 'an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle.'"  *Id.* at 907 (quoting *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005)).  The reasonableness of police conduct is measured by an objective standard, considering the totality of the circumstances.  *See United States v. Rideau,* 969 F.2d 1572, 1574 (5th Cir. 1992).  The Fourth Amendment is satisfied "[a]s long as all the facts and circumstances, viewed objectively, support the officer's decisions."  *Id.*

The summary judgment evidence shows that Woods was sitting in a grey Chrysler Pacifica in a public parking lot shared by a closed library and a park after 9:00 p.m. on a Friday night.  The Chrysler was the only car in the lot.  In the preceding week and a half, Conroe Police had received 20 to 25 reports of car burglaries by a "skinny black man in a silver Chrysler Pacifica."  When Holloway passed the library on patrol, he saw Woods—a black man—sitting in a grey Chrysler Pacifica.  When Holloway drove his marked patrol car into the parking lot, the Chrysler pulled out and left.  Holloway followed and did a computer check of the license plate.  The insurance status

came back as "unconfirmed."  Based on all these facts, Holloway had a reasonable suspicion that the vehicle Woods was driving lacked insurance, which is a traffic offense under Texas law.  *See* TEX. TRANSP. CODE § 601.051.  Holloway decided to conduct a traffic stop based on this reasonable suspicion.  These facts, when considered objectively, establish that the traffic stop was lawful.

Woods points to no evidence in support of his assertion that Holloway stopped him solely because he was black.  A party's conclusory assertions and unsupported opinions are not competent summary judgment evidence.  Woods's subjective belief as to Holloway's reasons for the traffic stop are insufficient to defeat this motion for summary judgment, which is supported by competent evidence.  *See Valderas v. City of Lubbock,* 937 F.3d 384, 388 (5th Cir. 2019) (per curiam); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (per curiam); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

Further, even if the court credited Woods's opinions about Holloway's motivations, those opinions would not preclude summary judgment on this record.  An officer's subjective motivation for conducting a traffic stop does not affect the validity of the stop if the officer has reasonable suspicion to believe that a traffic violation has occurred.  *See Whren v. United States*, 517 U.S. 806, 813 (1996) (the law "foreclose[s] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved"); *see also Devenpeck v. Alford,* 543 U.S. 146, 153 (2004) ("Our cases make clear that an arresting officer's state of mind (except for the facts he knows) is irrelevant to the existence of probable cause.  [T]he Fourth Amendment's concern with reasonableness allows certain actions to be taken in certain circumstances, *whatever* the subjective intent.") (cleaned up); *Wood v. Bexar Cnty., Tex.*, 147 F.4th 534, 550 (5th Cir. 2025) ("an officer's subjective intentions have no impact on analyzing

14

reasonable suspicion or probable cause because they are both considered to be based on an objective test" (quoting *Lopez-Moreno*, 420 F.3d at 432)).

Woods also contends that the fact that the citation was later dismissed shows that the insurance lapse was a pretext for stopping the vehicle. The undisputed summary judgment evidence shows that the Chrysler was not insured when Holloway pulled Woods over. The fact that a traffic citation or ticket is later dismissed does not show that the officer lacked reasonable suspicion to conduct a traffic stop. *See Wren*, 517 U.S. at 819 (because it is only the initial stop of his vehicle that must be valid, if the "officers had probable cause to believe that petitioners had violated the traffic code[, t]hat rendered the stop reasonable under the Fourth Amendment"); *see also Wood,* 147 F.4th at 550 (the fact that driver did not receive a traffic citation during the stop did not demonstrate that there was not reasonable suspicion for the stop at its inception); *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009) (per curiam) (evidence that an arrestee is innocent of the crime charged does not determine whether there was probable cause to stop or arrest); *United States v. Ulibarri*, 723 F. Supp. 3d 1062, 1108 (D.N.M. 2024) (the issue is whether a stop is initially justified).

The summary judgment evidence shows that Holloway had a reasonable suspicion that Woods committed a traffic violation by driving the Chrysler without insurance. Because Woods has not shown genuine factual disputes material to determining that Holloway lawfully stopped the vehicle, Holloway and Tullis are entitled to summary judgment on this claim.

### C.    The Order to Exit and the Pat-Down Were Lawful

In the alternative, Woods argues that even if the stop was lawful, the order for him to get out of the Chrysler and the ensuing pat down were not.

Because of the "inordinate risk confronting an officer as he approaches a person seated in a vehicle," officers have the right to order the driver out of the vehicle during a traffic stop. *Pennsylvania v. Mimms*, 434 U.S. 106, 110–11 (1977) (per curiam) (a police officer conducting lawful traffic stop may order the driver out of vehicle as a matter of course without violating the Fourth Amendment, even if the officer has no reason to suspect foul play from driver); *accord Maryland v. Wilson*, 519 U.S. 408, 410 (1997) (applying the *Mimms* rule to passengers as well as drivers). If an officer has lawfully conducted a traffic stop and reasonably believes the person may be armed and dangerous, the officer may conduct a limited protective pat-down search for concealed weapons. *Terry v. Ohio,* 392 U.S. 1, 24 (1968); *see also Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009). The officer has the right to conduct a pat-down search for officer safety even if the detained individual does not consent. *See United States v. Jenson*, 462 F.3d 399, 407 (5th Cir. 2006).

The video of the traffic stop shows that Woods was hostile from the inception of the stop. He was verbally adversarial, he demanded the officers' names and badge numbers, and he insisted on filming the encounter. Even after Woods's mother admitted that there was no insurance on the Chrysler, Woods questioned Holloway's reason for stopping him, accused Holloway of racial profiling, and refused to get out of the car. Under these circumstances, the officers had the right to insist that Woods get out of the Chrysler. In addition, under these circumstances, Holloway had the discretion to conduct a pat-down search for weapons to ensure officer safety—a pat-down search that did not require Woods's consent.

Woods has not shown that genuine disputes of fact exist material to the question of whether the order to get out of the Chrysler and the pat-down search were lawful. Holloway and Tullis are

16

entitled to summary judgment in their favor, and Woods's claims on this basis will be dismissed with prejudice.

### D.     The Inventory Search Was Lawful

Woods also contends that the inventory search of the Chrysler was unlawful because he did not consent to it.  Holloway and Tullis contend that Holloway performed a lawful inventory search of the Chrysler before impounding and towing it as an uninsured vehicle.

"An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *Whren*, 571 U.S. at 812 n.1.  Inventory searches are "a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987).  They may be lawfully conducted when a vehicle is waiting to be towed.  *United States v. Sanders*, No. 4:20-cr-32, 2022 WL 411165, at *6 (E.D. Tex. Feb. 9, 2022); *United States v. Duarte*, 52 F.3d 1067, 1995 WL 241789, at *2 (5th Cir. 1995).  Inventory searches may include a search of closed compartments and personal effects.  *See Bertine*, 479 U.S. at 372-74.

At the same time, "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells,* 495 U.S. 1, 4 (1990).  To prevent "general rummaging," the law requires that an inventory search be both reasonable and "conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from danger." *United States v. Lage,* 183 F.3d 374, 380 (5th Cir. 1999); *see also S. Dakota v. Opperman*, 428 U.S. 364, 369 (1976).  The standardized regulations and procedures must "sufficiently limit the discretion of law enforcement officers to prevent

inventory searches from becoming evidentiary searches." *United States v. Andrews,* 22 F.3d 1328, 1336 (5th Cir. 1994). An "ulterior motive to search" will not invalidate an otherwise lawful inventory search that complies with the established regulations and procedures. *United States v. McKinnon*, 681 F.3d 203, 210 (5th Cir. 2012) (per curiam).

The City of Conroe Police Department policy on impounding and towing uninsured or unlicensed vehicles provides, in pertinent part:

>      C.     Vehicles on Private Property
>
>             1.     At the conclusion of the traffic stop or accident investigation of a motor vehicle stopped on private property or publicly accessed property, the motor vehicle shall be removed for safekeeping purposes if no financially responsible licensed operator is present to assume responsible for operation of the vehicle.
>
>                    * * *
>
>      D.     Towing and Storage
>
>             1.     A vehicle removed under this policy will be towed by a rotation wrecker and placed in their respective vehicle storage facility.
>
>             2.     The officer will complete a vehicle tow slip and conduct an inventory of the vehicle to ensure that no preventable loss will occur concerning perishable and/or valuable items.

City of Conroe Police Dep't Gen. Order No. 7-08 (issued Feb. 15, 2012), available at https://cms3.revise.com (visited Oct. 6, 2025).[3]

---

[3]The court may take judicial notice of publicly available official documents and policies "whose accuracy cannot reasonably be questioned." *See* FED. R. EVID. 201(b).

Woods does not dispute that Holloway followed the Conroe Police Department's policy concerning inventory searches. Woods contends that Holloway did not obtain his consent before conducting the search and that he exceeded the scope of an inventory search.

Police officers do not need to obtain consent for an inventory search as long as that search is conducted in compliance with department policies. *See Opperman*, 428 U.S. at 384 (Powell, J., concurring) (noting that consent for an inventory search is not necessary because the owner of a vehicle that is subject to an inventory search is often not present at the time of the search). Woods does not contend, much less point to any evidence, that the Chrysler was unlawfully impounded or that Holloway failed to comply with the Conroe Police Department's policies in conducting the search. The inventory search was not unlawful because Woods did not consent.

Woods also points to no evidence tending to show that Holloway acted in bad faith in conducting the search or conducted it for the sole purpose of searching for contraband. *See Bertine*, 479 U.S. at 372-73; *see also United States v. Hall*, 565 F.2d 917, 922 (5th Cir. 1978) ("The investigating officer's suspicion that he might find contraband or other evidence does not invalidate an inventory search where it is clear that the procedure used is a valid inventory procedure and is not merely a pretext for a search."). Woods's conclusory allegation that the search was conducted for a nefarious purpose is not sufficient to avoid summary judgment when the video and other record evidence shows otherwise.

Woods has not carried his burden to show that there are genuine factual disputes material to determining that the inventory search of the Chrysler was lawful. Holloway and Tullis are entitled to summary judgment on this issue. Woods's claims based on an unlawful search of the Chrysler are dismissed, with prejudice.

### E.    There is no Evidence of Racial Profiling

Woods alleges that Holloway and Tullis violated his Fourteenth Amendment equal protection rights by stopping him based on racial profiling rather than on a reasonable suspicion of a traffic violation.  In support of this claim, Woods alleges only that he was stopped without a legitimate basis.  (Docket Entry No. 12, p. 3).

A claim of racial profiling is based on "selectivity in the enforcement of criminal laws." *United States v. Armstrong*, 517 U.S. 456, 465 (1996); *Wayte v. United States*, 470 U.S. 598, 608 (1985).  To prove racial profiling, a plaintiff must demonstrate that he was treated differently than other similarly situated individuals and that the unequal treatment arose from a discriminatory intent.  *See Stout v. Vincent*, 717 F. App'x 468, 471 (5th Cir. 2018) (per curiam) (quoting *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 227 (5th Cir. 2012)).  The plaintiff's "subjective belief that he was discriminated against, standing alone, is not adequate evidence to survive a motion for summary judgment." *Id.* at 472 (quoting *Raina v. Veneman*, 152 F. App'x 348, 350 (5th Cir. 2005) (per curiam)).

Holloway and Tullis have moved for summary judgment on this claim, noting that there is no evidence that they treated Woods differently from any non-African American driver who was similarly situated.  In the absence of evidence of disparate treatment between Woods and similarly situated non-African Americans who were driving vehicles without insurance, Woods has not stated a viable claim of racial profiling.  The motion for summary judgment on this claim is granted.

### F.    The Officers Are Entitled to Qualified Immunity

Finally, Holloway and Tullis contend that they are protected from liability under the doctrine of qualified immunity.  "Qualified immunity protects officers from suit unless their

20

conduct violates a clearly established right." *Austin v. City of Pasadena, Tex.*, 74 F.4th 312, 322 (5th Cir. 2023) (quoting *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  To determining whether qualified immunity applies, "first we ask whether the officer's alleged conduct has violated a federal right; . . . second we ask whether the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (quoting *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc)).  When a defendant moves for summary judgment based on qualified immunity, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to immunity by showing a violation of a clearly established constitutional right.  *See Escobar v. Montee*, 895 F.3d 387, 393 (5th Cir. 2018).

Woods has not carried his burden to show genuine factual disputes material to determining whether Holloway and Tullis violated his constitutional rights.  The summary judgment evidence does not show that either Holloway or Tullis violated Woods's constitutional rights either before or during the stop and search.  And while Woods contends there are genuine factual disputes as to whether Holloway's subjective reason for the initial stop was racial profiling, they are not material because, as explained above, an officer's subjective intentions are not material to the constitutionality of the stop.  *See Whren*, 517 U.S. at 813; *Wood*, 147 F.4th at 550 ("an officer's subjective intentions have no impact on analyzing reasonable suspicion or probable cause because they are both considered to be based on an objective test").  In the absence of evidence that either Holloway or Tullis violated Woods's constitutional rights by stopping him without a reasonable suspicion of a traffic violation, they are protected from his action by qualified immunity.  Their motion for summary judgment on this basis is granted.

## IV.   Conclusion

Holloway's and Tullis's motion for summary judgment, (Docket Entry No. 38), is granted. This action is dismissed with prejudice. Any remaining pending motions are denied as moot. Final judgment will be separately entered.

SIGNED on October 21, 2025, at Houston, Texas.

_____

Lee H. Rosenthal
Senior United States District Judge